Welcome. Welcome to all. The first call on our agenda this morning is number 4, number 130779, People of the State of Illinois v. Isaiah J. Williams. I'll go for the appellant. Are you prepared? Oh, I should make another announcement. I mentioned to our new Chief Justice, as you probably know, Monday the court selected as the next Chief Justice Justice P. Scott McGill. We're very excited about the future. I told him this morning that the title is very exciting to me and Chief Justice, but these are the kinds of issues the Chief has to deal with. Earlier this morning I was informed that the transformer for all the lights had gone out and they went to the hardware store and they weren't readily available. We're going to have to order transformers. So unfortunately this morning the lights are not working for council tables. So it's going to be a little tricky. There are other lighting, obviously. I think the alarm, the warning lights are working. Is that correct? Yes. That took some time. So those are these exciting issues that Chief Justices have to worry about. And we apologize. Hopefully there's enough light in here for you to see your notes so that we can have a conversation about these cases. With that, counsel for the appellant. Good morning. Good morning. I'm sorry, but I have to question your starting premise. You say they both define this offense. Doesn't one define the offense and then the other one describes the elements of the offense? Yes, I think it's true that 11.50 does additional things beyond what 11.49 does. I would say they both attempt to define the offense. So while 11.49 is just a definition presented in a natural language form, 11.50 also defines the offense. It just defines it and also says let me list off all the elements of the offense and instruct you, you know, here's where you have to go down the list. In that sense, they both are definitional. Just 11.50 does something on top of just merely defining the offense. And because the way they define the offense is different, 11.50 contains the requirement that there must be a specific fact that they could be a threat. 11.49 does not. When both of these are presented to the jury, it is possible they could read the definition of the offense that does not contain the element and conclude, okay, this is a superfluous part, that 11.50 contains this element that says, yeah, these are all the listed elements of the offense, but the actual definition, which again, for us as attorneys, 11.50 makes a lot more sense. Given our experience in law school, our experience in law, 11.50 is an instruction we all immediately understand and would probably prefer. We don't need the natural language definition. We would prefer to see, okay, here's just a list of elements. I can go down the list. I can use my legal background. For an ordinary person, 11.50 is not necessarily what they encounter in everyday life. Most people are not encountering a technical definition of a statute that goes A, B, C, D, E, and here's what you do. So 11.49 presents the offense in a more understandable natural language where I say, hey, read this paragraph. It will tell you what the offense is, and it will include all the elements. In this case, it did not include all the elements. It was missing an essential element. Counsel, let me ask you this. So 11.50, in addition to listing the elements, it tells the jury, if you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. And if you don't find them, then you should find the defendant not guilty. That's the language that the jury receives when they're determining how to, you know, their verdict. So I don't understand how there is a conflict. Are you suggesting that somehow the jury would, instead of following 11.50 and making their determination, somehow they're going to go back to 11.49 and say, oh, well, there's something in 11.49, there's something in 11.50 that's not in 11.49? I mean, how do they get there? Well, I think it's just as you described. Firstly, the Instruction 101 says the law applies to this case and these instructions. It's your duty to follow all of them. You may not single out certain instructions and disregard others. So the jury is specifically told, you must read every instruction. You must read and follow them. You can't selectively choose. So our hope would be they went to 11.50 and just did as it said, but we can only speculate on that. We don't actually know what happened when they go to the deliberation. Frankly, we don't want to be probing what they do. That's why we want the instructions to be correct. We want the instructions given to them to accurately reflect the law so we don't have to have this guess of, well, did they follow 11.50? Did they look at 11.49 and it's missing an element? Did they look at one and say, well, that's gone, it's there? We don't want to do the puzzle. We want them to just be given the correct instruction. Counsel, there are other IPI instructions where the definitions are separate from the elements. Are you saying that in every other IPI instruction, if we find the way you're asking us in this case, in which the elements and definitions are not in the same language, not in the same instruction, that those are all in conflict? Well, I wasn't aware, you know, I was looking through, I wasn't aware of a definition of instruction that was completely missing elements from the charge instruction. Well, I would, your characterization is missing elements. I'm not sure that that's what your opponent on the other side says. But if these are, if one defines the definition, one is the definition and the other one is the elements, are you saying that whenever that happens, it's a conflict? And so if there is an IPI instruction that follows that model, those are all in conflict. So we, those should all be found in conflict and not valid in accordance with your argument in this case. Is that what you're saying? Well, I would say yes. If the definition instruction is missing an element and the charge instruction has the element in their conflict, yes, they should be changed. You're saying missing an element. I noticed I didn't use that term. You just didn't say it's contained in the other instruction. Yeah, I don't kind of want to speculate about beyond what's presented in this case, you know, if there are other circumstances or other instructions that are not definitional to the offense. What we do in this case does impact other cases. Yes, but this case, you know, this deals with two instructions, as I said, that both define the element, that both define the offense and give the elements. So that's a pretty specific situation. I have a concept that these are two complementary instructions. What about that? They're complementary in the sense that 1149 and 506 give them both together and they do complement. That's kind of the issue is that they're complementary, but yet one has this part and the other one does not. So you're giving the jury, the jury gets both instructions. They read this is the definition of what the offense is. And to the question of whether it's, you know, essential as brought up earlier, it is essential. The statute says, you know, it must contain specific facts indicative of a unique element. It cannot be a generalized threat of harm. That is a very different, that's very different from threats without that element. Because without that in there, it would mean the jury could say, okay, it is a generalized threat of harm. They don't have to show this additional requirement of a specific fact indicative of a unique element. So in that sense, I think they are meant to complement one another. I think it's argued in the brief, you know, one is in a different form. One's kind of, as I was arguing earlier, one is kind of more understandable maybe to an everyday person who's not familiar with the law. The charge instruction is a more technical form telling you here's what you do. You're breaking it down. So you're saying they're complementary and they're in conflict? Yes, I mean, I think that's why the committee recommends giving both. They are meant to complement one another. In my assessment, these two instructions are meant to be given together because they serve slightly different purposes. You know, I can't speculate fully what those purposes are because, you know, I don't know why the committee has decided let's give a definition, let's give a charge. But that was decided, so the definition should be accurate. It shouldn't miss things that the statute requires the state to prove beyond a reasonable doubt. It's not, you know, the definition instruction. It's not that it's in conflict. It's just that the charge is more complete, don't you think? Well, I think that that is what a definition is. One instruction contains everything the other one does not. We're talking about elements. The only way they can be in conflict is the absence. A jury instruction is not, you know, the definition instruction is not going to say, you know, you don't have to find a specific fact indicative of a unique element. That just wouldn't make any sense. The conflict occurs because 1149 is just completely missing the element. Thus, when you read 1149, you could conclude, okay, well, they only have to find a generalized threat of harm. It doesn't have to be specific. It doesn't have to be unique. But what about the instructions tell us a jury that it's okay to do that? So there's nothing in the instructions. What's the specific language in the instructions that tell the jury that you don't have to find all of the elements in the element instruction? So it's not necessarily that the instructions say, like, okay, you can do this. The instructions tell them, read all the instructions. Do not disregard them. They're going to look. The two instructions that both say, here are the elements of the offense, they're different. So we don't know what happens after that point. I, you know. Should we assume that the jury followed the instructions? No, because they weren't given correct instructions. I mean, I also think we don't have to speculate about what they did or did not do. You know, that's kind of what my earlier point is. We don't really want to get into trying to analyze, well, what did they do better? We want to start from the premise of the instructions correctly reflect the law, and we give it to them, and then they follow the law. We don't want to have to say, well, okay, one instruction is right, one instruction is wrong. You know, 7% chance they followed the right one. So good enough. It's easier to start from the premise of give them a correct set of instructions that reflect the law, and they will follow those instructions. We don't have to concern ourselves with did they or did they not follow it. I would also, you know, as I said before, this court's previous cases, you know, support our argument. Firstly, there's Jenkins, which discusses that, you know, the inaccuracy of the instruction. You know, while it's true that an instruction may be inaccurate, other instructions may remove this error. Such cannot be so when the instructions are in direct conflict with one another, one stating the law correctly, the other erroneously. This is particularly true when the instruction defines the issue of the case or is mandatory in character. In this case, 1149 does define the elements of the case and is mandatory. If the court gave 1150, 1150 says give 1149. There wasn't the option to say, well, I'm just not going to give this. I'm going to do something else. So in that sense, the court, when this was the offense, they had to give the two IPIs that both define the offense and the charging charge. In that sense, since they are in conflict, that created a prejudicial error that this court should reverse and remand for a new trial. And also advise that 1149 be modified. I'll also point out that, you know, the instructions were modified. These two instructions were modified at least once because 1150 at one point didn't have the unique fact requirement at all. And the reasonable apprehension requirement was missing from 1149. Thus, at one point, the committee did make the reasonable apprehension requirement parallel between 1149 and 1150. But unfortunately, due to an oversight, just didn't make this additional element also parallel. In that sense, the resolution to this is relatively straightforward. They just need to make that additional parallel requirement and put in 1149 the requirement that there have to be specific facts indicative of a unique threat. Is there really prejudice? And there's a statement, well, I will slash your throat if I see you on the street. Is that specific? Well, I would argue that there's, you know, counsel was arguing there wasn't a threat. It's not, he's, it's kind of a conditional statement. If I see you on the street, you know, he's not saying he's going to do it. There's no evident time frame. You know, I, unfortunately, in the course of preparing this, there aren't a lot of cases getting into what is a unique fact. You know, what is it is specific fact indicative of a unique threat and not a generalized threat of harm. I don't believe there's a ton of litigation on, okay, this is exactly what this means. But, you know, looking at concepts like the common law, like a true threat versus not a true threat. Like, usually there has to be, you know, additional requirements beyond just, you know, I'm going to hit you or whatever. Or, you know, if you take the handcuffs off, you know, I would attack you or something like that. In that sense, because this threat was given to a third party, it was wasn't it wasn't indicative. I'm going to go do this at this time. It was more conditional. There is an argument that maybe it wasn't a unique threat. I think that that, I think that speaks to the problem with not giving the instructions correctly to the jury. That they could say, well, okay, it was sort of generalized. You know, he said something that sounded bad. It sounds graphic. So that's enough. Even if he didn't necessarily intend to do it eminently or that he didn't actually intend to follow through, it wasn't unique. You know, it didn't have any specific facts. It just kind of had the gruesome language. Okay, well, that's enough. What would make it more specific than I'm going to slash your throat if I see you on the street? What would be, you're saying that that was kind of generalized and that wasn't a specific threat to that officer. What would make it more specific? So let me be clear. I'm not necessarily arguing that it was not a specific threat. I'm saying there is an argument that could be made that maybe was, that defense counsel certainly in the closing was arguing all the statements did not amount to a threat. So I'm saying there is an argument that could be had and it was litigated. So when the jury gets back, the question is, did they actually consider that requirement, that there was a specific fact indicative of a unique threat? Even if on appeal we're kind of saying, well, in the language of the statement and all that, all right, that would be a unique threat. My point is, in the deliberation room, did they, were they given the opportunity to consider that fully? That necessary requirement that, yeah, it can't just be a generalized threat of harm. Well, it sounded bad, so therefore we should convict him. You know, in a more specific answer, I would say, again, it's a conditional statement like if I ever. Tell me, I know it's the crux of your argument, but I want to be sure I understand it. What would preclude the jury from considering that specific language as a threat specific to that officer? So they're not necessarily precluded. The thing is that they were given two instructions which were both given the elements and one has it, one doesn't. So there is the possibility, which we can't really know what they did. And, you know, they were given an instruction that did not include all the elements. Then they were given the charge instruction, which does have all the elements. As I said. So the jury was specifically told that the threat to a sworn law enforcement officer contains specific facts indicative of a unique threat to the sworn law enforcement officer and not a generalized threat of harm. The jury was told that's the fifth element that you have to find. The state has proven. And unless you find that, you must find the defendant not guilty. And then they were also told a threat against the officer that did not include that. So they were told, okay, to find him guilty, you have to find that. And then they were given a definition of a threat that did not include that. And in the definition instruction, is there any guidance for the jury as far as what you have to find in order to find the person guilty and your obligation if you don't find those things? Does 11.49 speak to that? No. But, again, it is telling the jury this is what the offense is. In that sense, it should be correct. It shouldn't be in conflict with another instruction that has the element, this one does not. But didn't counsel in this case, didn't he specifically agree to the giving of 11.49? He said, you know, it's a good one. It's just a proposition. Yeah. So his exact words is no objection. This one is good. It's just a proposition, which is not accurate. This is not 11.49. It's not a proposition. It's 11.50. It's a proposition. He didn't object to the giving of either of these instructions. Is that correct? Correct. He did not object. So why shouldn't we find that this is invited error if there is any error? Well, because 451C specifically says that substantial defects are not waived by the failure to make a timely objection. And in the jury instruction context, you go to a conference and you're asked on every single instruction, objection, not objection. So if saying no objection to a jury instruction is invited error, basically 451C would be completely consumed. Because every defense counsel is either objecting, in which case 451C is irrelevant. They objected. Or they said no objection, and the substantial defect would then be found to be waived because, well, counsel didn't say objection. So they allowed it to happen. I'd also say jury instructions are just so fundamentally different from other parts of trial because these are what we give the jury to deliberate and decide the case. It's not about the trial strategy and evidence. It is about, OK, we want to instruct these people to be able to know the law, follow the law, and proceed. The court, all the three parties have, the court, counsel, state, all have a duty to make sure the jury is correctly instructed. It does not just fall on defense counsel to do it. If the court saw the instruction and knew they were wrong, the court would have also had a duty to say, wait, I can't get this instruction. It's not right. So in that sense, I don't think invited error applies specifically with what defense counsel said. Also, I think 451C would cover it. And this court's previous jurisprudence, including Heron and, you know, looking at just the Jenkins, Hartfields, and Woods, they all apply second-pollen claim error to this kind of error where there's a conflict between the jury instructions. Well, if there are no further questions, I would ask this court to reverse Mr. Williams' conviction, remand for a new trial, and advise that IPI 1149 be updated to include the missing office. Thank you very much, counsel. Thank you. Counsel to the operator. Good morning. May it please the court, counsel. My name is Assistant Attorney General Nick Moeller on behalf of the people. Now, defendant's claim is that the trial court erred by giving an IPI instruction promulgated by this court and that this court has instructed the courts to give. And though he spent all of his time talking about that error at the base of it, this court does not get to that error in the context the defendant has presented it. Because regardless of the argument of acquiescence, he at least concedes that he forfeited the instructional error, which means the only avenues that would be open to him normally are plain error and ineffective assistance claims. However, he can't look to plain error in this case because counsel did not simply remain silent, which is the base rock of what forfeiture is. Counsel said not only no objection, but this one is good. And just a year ago, this court noted in Cassata that the phrase no objection when affirmatively told to the court is not forfeiture. It acts as an acquiescence. And there is no reason to create a whole new case law of what plain error is solely for the context of instructional error, as counsel seems to be asking, because plain error applies to all errors the same. And I would argue that evidentiary errors would actually be more important for this question of what's more important for the jury, because the evidence is what the jury is actually considering. And in that case, there's no question that no objection means acquiescence. Acquiescence is a type of waiver, and plain error cannot overcome waiver. And so could you address the argument that was made here that in this context of what happens when counsel does not, for example, provide an alternative instruction or raise the issue in that clean kind of way, that we should be looking at the Supreme Court rule, 451C? How does that fit? That's a new question today, I think, Your Honor. I think at least on the case law, 451C and plain error are identical. The court has always treated them identically, and there hasn't been a distinction in the briefing about why they should be treated differently, despite the fact that the court has said 451C operates as plain error. So in order to get to that question, I think we'd have to require more briefing, because the case law and the argument to this point has just been those are the same thing. And really, there's no reason for them not to be, because an error is an error, and counsel has the opportunity to remain silent, and if he does, that leads to potentially forfeiture, or counsel can speak up and either make an objection, put it before the court to fix the error, or agree to the error in some way through acquiescence or explicit waiver, and therefore plain error is off the table. And in that case, it's not a problem, as seems to be suggested, that that error is never touchable, because as the state is ready to argue, there's still that avenue of whether counsel was ineffective for failing to make that objection or by acquiescing in some way. And so turning to the error alleged before the court in that framework first of ineffective assistance, the question first becomes, was counsel performing deficiently by not objecting, by agreeing to this instruction implicitly? And the answer is no, because in order to be ineffective, counsel's behavior or his performance has to be unreasonable, objectively unreasonable. And in this case, first and foremost, defense counsel relied upon IPI instructions put forth by this court for the explicit reason of both trial courts and counsel to rely upon in their practice. And there has been no case that said that this specific language was required in 1149. There's been no court case that said that change had to be made. And so it can't be said that counsel was unreasonable for following this court's directions through the IPI instructions to give or to ask for or allow 1149 and 1150 in the way they were in this case. To say otherwise would require counsel to either challenge every IPI instruction because maybe the court will change its mind despite what it said in the past, or be called objectively unreasonable. And that's just not the way an ineffective assistance claim works. That's not the way the deference of counsel's performance works. But even getting beyond that to the actual error here, counsel also is not deficient because there just was no error in giving the instruction. There was no inconsistency. What you had in the instructions was a general statement of what the jury was going to be considering and then its actual instructions of what to do. Only one of the two challenge instructions actually tells the jury, in the way counsel put it, here's what you do. And that's 1150. That's the instruction that counsel has not argued had any failure in its structure. It includes all the propositions. It's the only one that says the state must prove. It's the only instruction that tells the jury if you find. When you look at Jenkins, the instructions that were considered error by this court in Jenkins, both included the phrase the state must prove. And both of those instructions also said, also directed the jury about what they would do if they found those propositions. So there you had directly contradictory instructions, both telling the jury what they had to do and saying incompatible things. Here, there is no directory language between the two instructions. There's the general explanation of the crime, and then there's the this is what you do. The same can be said of Hartfield. When Hartfield found error, it was because the jury was first instructed of the element regarding whether saying they had to find an individual was in the line of fire, and then during deliberations, another instruction was given saying that they would have to find if he may have been in the line of fire. So the contradiction there was the same element. Both is one they're being told what they have to find, and that element contradicts. Here, there is no contradiction in what the jury was told to do. And so there was not this inconsistency, this special level of instructional error that was found in Jenkins and Hartfield. So we look at normal instructional error, and the question there is always a question of, well, when we look at the instructions together, was the jury informed correctly? And here they were. They were told what they had to find. They were told what the state had to prove. And even if we look beyond that, that's how closing arguments went. They were again told what the propositions were. So there's no real question here whether or not the jury knew it had to find a specific threat. And because the instructions did not conflict, therefore counsel cannot be deficient for not raising what would have been a meritless objection to the instructions. Beyond that, even if the defendant could show counsel was deficient, he would have to show that there is a reasonable likelihood that had counsel objected, the trial would have ended differently. He would have been acquitted. For the first point, and on a similar argument, there can be no prejudice. This was a meritless objection, and therefore had counsel objected, nothing would have changed. But on a more looking-at-the-facts prejudice approach here, there was no question that the defendant made this statement. He admitted it in his testimony. There was no real question that the statement was specific. He not only said, I'm going to kill you, he said how. How he was going to do it, he was going to slash the officer's throat. There is no case that says you have to give a time for when you're going to carry a threat out. And there was no argument made by counsel below that the threat was not specific enough. In fact, if you look at the closing arguments, they followed a similar path. The statement first, it gave all the elements, including the specificity element, and it said, look, he said a lot of awful things. Those are not threats. Those are not what we're talking about. We're talking about this threat, this throat-slashing threat. So the State, telling him the elements, instructing him on the specificity, made it clear, we acknowledge. We're not talking about all these things, he said. The only thing that's specific enough is this threat about killing him by slashing his throat. Then defense counsel came up and drew the same grouping of the statements. He said, yeah, he said a lot of bad things. Those aren't threats. The only one they have is supposedly on film I didn't show. He's there drawing the same dichotomy the State did. There's no question. He said a lot of things that were too generalized to be the threats the statute is talking about. What we're talking about is the I will slash your throat language. Then counsel for defendant did not go on to say that's not specific enough. What he said was the officer wasn't afraid. Defendant didn't actually do anything. The officer wasn't afraid. And that's the one thing the State can't show you is that element. And what he's referring to there when saying the officer's not afraid, the defendant didn't do anything, is the element of reasonable apprehension. He doesn't say reasonable apprehension, but anyone listening to it knows that's what he's talking about. That's what he's identified as the one element that's really in dispute. And, therefore, an error relating to the instruction on the specificity, a different element, an instruction on that would not have affected this trial. Because the jury knew it both from 1150 and from closing arguments. No one was actively contesting that. And no one reasonably could have actively contested that because he said if I see you again, I'm going to kill you. I will slash your throat. But if this court chooses not to find acquiescence and we get to claim error instead of ineffective assistance, the argument remains largely the same. Except this time the first step is to talk about clear and obvious error. And so instead of talking about counsel, now we're talking about the trial court. The clear and obvious error is an error that's so obvious that the trial court had a sua sponte duty to do something. But the same argument that says what counsel wasn't unreasonable says why the trial court wasn't unreasonable. The trial court has the IPI instructions from this court saying what the law is and saying these should apply. And there was nothing given to the court, there was nothing in the appellate case law about specificity of the threat that told the trial court these correct instructions were incorrect. And so it should go off from what the IPI says. But even if it did, even if we could get past that point, we get to the prongs of plain error. There is whether the evidence is closely balanced, which is not being argued in this case and has therefore been forfeited. And the one that matters, second prong, plain error. Was this structural error? And as this court has said, this court has only found structural error in two cases, those being Jenkins and Hartfield. And as I explained before, the reason it's error there is because both instructions that were challenged in those cases were telling the jury what to do and it told the jury two different things. Here, only one of the instructions told the jury what to do. And therefore, it wouldn't be second prong, plain error under either Hartfield or Jenkins. But we also have to take into consideration the case Woods. Because in Woods, though it wasn't dealing with plain error, it was dealing with whether harmless error can apply to errors of this type. And as Woods acknowledged by looking to Jenkins and Hartfield, the question of whether harmless error review applies and whether second prong, plain error applies is different. But it's like two sides of the same coin. The question is, can we look at this error and decide whether or not there was prejudice? Because if you can't weigh the evidence in a way to decide did the jury rely upon it, if you can't find a way to decide we really don't know what the jury did, then harmless error can apply and you have second prong, structural error. However, if someone can look at all the evidence, look at the instruction in question and decide, there's no reasonable likelihood, beyond a reasonable doubt, that the jury would not have changed their verdict based on this instruction. In that case, harmless error would apply. And by the same token, it couldn't be second prong, plain error. So help me play that one out. You're saying that, you're talking about prejudice here. Yes. You're talking about prejudice in the context of structural error. Aren't those two different ideas? They are different but connected. Because the idea is, can you show prejudice or not? And if it's the type of error where the prejudice analysis just can't be gone through, there's just no rational way to think through the prejudice, that's the type of error, structural error. Because we can't weigh the evidence in a way that we can determine whether or not that error is so strong that it would hurt the defendant no matter what. So where are you getting there? I mean, is that from case law? You're introducing the idea of prejudice in the terms of second prong error or how the two ideas work together. Where are you drawing that from? So structural error, when this Court discusses it, it has said at times that structural error is an error that's so important, so strikes at the integrity and the heart of the Court, that prejudice must be presumed. When you look at Woods, which is not talking about structural error, but it is looking at a harmless error review, it recognizes the balance there. Because even though it's not talking about structural error, it looks to structural error to say, well, the way we tell whether a harmless error review applies or not is we look at whether something is structural error or not. Because if something can be structural, if something is structural error, harmlessness cannot apply. So largely I would take it from Woods. The fact that Woods say, well, here's how we're going to test whether or not harmless error can apply, and it's would this be structural error, because it looks to Hartfield and Jenkins cases on structural error. Isn't harmless error more about who has the burden versus plain error? That, in one sense, Your Honor, that, yes, there would be a difference in who has the burden, that defendant has the burden in plain error and that the State has the burden in harmlessness review. But when you look specifically not just at plain error as a whole, and look away from because that would also comprise the closely balanced prong, but if you look at the second prong plainly by itself, there's also this question of can we weigh the prejudice? Because the whole point of the second prong is there are errors that we determine that this court has determined. There's a class of errors where it's just too hard and it's too impossible to weigh the prejudice, and that's why there's second prong. The courts can't weigh it, and so therefore we're just going to presume there was prejudice because there's no way to show there's not. Then Woods comes along and says, okay, but by that same token, the test then becomes, well, can we weigh the evidence? Is the error in such a fashion that we can decide whether or not there was prejudice? And the way Woods did that was sorry. You're reading me correctly. I was about to say something. I don't know. I mean, maybe we're getting a little far afield here, but in terms of what you're saying, I guess I've always viewed second prong plain error not so much about we can't weigh the prejudice, that we don't care whether or not there was prejudice because the error is so egregious and strikes at the heart of a fair trial. And so I don't know, but I have another question for you. Moving forward, you know, it's possible that these instructions could be modified. Was there a conflict between 4-9 and 5-0? Is there a conflict the way it was given? No, Your Honor, because the instructions follow the way someone normally instructs, whether it's a layperson or someone in the law, whether it's an adult or a child. Usually the way you instruct something is you start with something general, you appoint the person you're trying to explain to a general concept, and then you get more specific. You don't throw all the specifics at them at once because then they might not be able to follow it. That's largely how this works for the jury when they heard these instructions. They were told the general proposition of what they were there for, and then they were told, and here's what you do to use counsel's words. They were then given the instruction that says, now we're going to tell you both what the state has to prove and what you have to find. And so there's no conflict there. They're different instructions, sure, but they're serving different purposes. And I think it's important to point out, the court below and opposing counsel, we refer to this as the definition instruction and the issues instruction. That's not what the jury is told. The jury is not thinking when they hear these instructions, ah, I've been told the definition. This is the definition. This is what I put to. They're just read the instructions straight out. They're not even separated in a way that the jury would know it was giving two separate instructions in this case. And so there's no real conflict there, much the same way as with these instructions. There is no conflict that 1149 said the threat must be to a public official, and then the next instruction given, 1149A, said, well, a law officer is a public official. That's how instructions work. You're told something, and then you're given the definitions to say what does that first part mean. It's not saying, well, in this case you have this threat you have to prove in 1149, and 1150 is telling you here's this other thing. 1149 is saying there has to be a threat, and 1150 is saying, here, let me tell you what a threat means in this legal context. And so because there's no actual inconsistency here, counsel can't be ineffective because there was no reason to object when there's no error. The trial court can't have committed plain error because there is no clear – if there's no clear and obvious error, there is no plain error analysis. And therefore, under any analysis, even if this was a preserved error, this claim must fail because the instructions just don't conflict. But you don't feel there's any reason to amend 1149? If this court were to find there was a conflict, then yes, the state would believe the proper thing to do would be to amend 1149. But the reason it doesn't need to is both there's not the inconsistency, but 1149 doesn't just apply to cases like this. 1149 is for all threats to public officials. And so there are threats to public officials where there's not this additional element of the specificity requirement because that applies to law officers and certain other class of individuals who are, frankly, more likely to see threats given the nature of what they do. And so because 1149 is the general instruction, the one that applies to all, if this language is put into it, then there has to be two different instructions because we have to explain what does the court do in these other class of offenses. But there's no need to do that because that's what 1150 is for. That is why you have an issues instruction is to tell the jury on these specific facts, this is who they have to find the victim was, this is how they have to find what this is, what the state proved, and this is how specific the threat had to be. Because we have 1150 and because these are designed to work in tandem, there's no reason to change 1149 because, simply put, a jury hearing these instructions would know what to do. So unless there are any further questions, we would ask that you affirm the court rule. Thank you. Thank you very much. Counsel in reply. Thank you. Let me begin where counsel ended, which is are these instructions in conflict? The counsel spoke about the general nature of the definition instruction. However, I think that there was an implication in that argument that, well, they're general, therefore, they can miss elements. That is not true. The definition instruction needs to be a legally accurate definition of the offense. It's not just a generalized statement. If you read definition instructions, they contain all the elements broken down into natural language. They are not, well, okay, this is generalized away so, you know, it is the elements from the statute written in a form of a paragraph. There's also an additional instruction in this case given which tells them, okay, because he's a peace officer, here's an additional requirement. There's no reason why this element should have been removed from the definition instruction. The element should be included because it was something that was necessary for the jury to find and to understand about the offense. May I ask you a question about the legal framework here? Yes. We know that the arguments that you just made were not made. We know that. And so the issue is how do we reach these arguments? And so we've had a lot of discussion about the ideas of plain error, which are complex, obviously, as well as ineffective assistance of counsel. Now, could you help me be real clear? Under what theory are you saying that this court should engage the argument that you've made now that was not made at the trial? So I think two. Under Second Problem, Plain Error, Supreme Court Rule 451C. Supreme Court Rule 451C is very specific that the failure to object does not waive defense. The counsel kind of made an argument, well, this is new. 451C is presented in the opening brief, presented in the reply brief. He cited Quezada in the response. There's nothing new about it. Rule 451C says what should happen if counsel fails to object. I also say in my opening argument, I presented that jury instructions are just fundamentally different in the sense that counsel is always saying objection, no objection to every single instruction. There is no staying silent with jury instructions. The court cannot say, counsel, do you object to this instruction? Counsel just stares at the court for 10 minutes and says nothing. They have to say either yes or no. In that sense, if saying no objection means that you can't raise any jury instruction issues, it basically swallows up any possibility of raising that issue. So you are not arguing ineffective assistance of counsel? Yes, I am also arguing ineffective assistance of counsel. I just wanted to start with that. I apologize. How is counsel ineffective by complying with the IPI instructions? Yes, so as I also said in the opening, counsel, state, and court all have the duty to make sure the instructions are correct. Yes, the IPIs say these should be presumed, but presumption does not mean get the instruction even if it's incorrect. The definition of instruction in this case is wrong. There are, in fact, two appellate court cases talking about these instructions. One of them talks about how one of the elements was missing for both instructions. The other one, they both talk about this element specifically. There was an essential element that needed to be included. So there was appellate court law out there telling counsel that, hey, this element should be in the instructions. They were not in the instructions, so counsel was ineffective for failing to object to a definition that did not properly define the elements. They had a definition that was a lower threshold than what the state needed to prove beyond a reasonable doubt. So on the plain error side, counsel has argued, again, is this plain error in that the trial court, what was the trial court to do? The whole idea of plain error is the trial court should have sua sponte, without anyone raising the issue, somehow addressed these two instructions, perhaps modifying these instructions, when, in fact, all the trial court did was follow the IAPI. Is that error? Yes. So I would say the, you know, because the committee promulgated the instructions, it's understandable how the error was made. It's still an error. The definition of instruction is missing. I really think, what is, I'm getting kind of basic. What is plain error? You're saying the trial court, nothing, the trial court did exactly what this court is instructed to do, is to file the IAPI. Well, yeah, if the court read the IAPI and realized, wait, there's an element missing from this, yes, the court should have sua sponte, said, hey, wait a minute, this is missing the, let's say the court looked at 49, looked at 50 and said. Is that what the trial court has to do and every single instruction is say, well, this is what the IAPI says. Everybody agrees that this is the correct instruction. I'm going to do my own inquiry and write my own jury instructions? Is that what you're saying? Well, I mean, if the. The duty of the judge, because that's what you're saying. Yeah, yeah. You're talking about plain error. It's the duty of the judge to sua sponte to something beyond what the lawyers bring to the court's attention. And here, where the Illinois pattern instruction committee has proposed these, propounded these instructions. Every single case, in every single instruction, the court has a duty to look beyond the IAPI. Well, I, you know, I don't think there needs to be a great looking beyond. They could have just literally looked at the two IAPIs because 11.50 has this element, 49 does not. So the court just put the two instructions side by side. Wait, there's this in here and this is not in here. In that sense, yes, it was the court's. If the court knew that there was this error, the court had a duty to correct it. Now, as I said, because the court was following the IAPIs, it's understandable why they made the error. Because the committee created the instructions. The committee was, the committee had enough information at the time because these instructions were modified before for a similar issue in the similar elements to know, wait, let's put them in both. But for whatever reason, just oversight, it was not done. In that sense, yeah, the court does have a duty to make sure the jury gets the correct instructions. For instance, it's commonly found structural error, you know, failure to get the reasonable doubt instruction. Yeah, if the court looks at it, if the court gets an instruction, the instruction is wrong, just because the state defense counsel, just because the state presents it and defense counsel says no objection, the court can't look at a wrong instruction and just say, what happens? It doesn't matter that it's wrong, you didn't object, I'm going to tell the jury they're wrong as well. So in every case, every trial, in every jury trial, the court has an obligation to review IAPI instructions where there is no objection. And if later a court were to find that the instruction was incorrect, there would be structural error, and therefore there is an automatic reversal. So that's a lot of pressure to put on the judge in every single case and every single instruction. Well, with respect, the trial court should be reading all the instructions. We would hope that the trial court reads the entire instructions that are given, make sure there are no mistakes, and make sure it complies with the law. I think, yeah, we should require the thing that we give the jury to understand how to apply the facts of the case. The judge should look over it and make sure yes is correct. Now, as I said, because the committee is the one that issued the instructions that had this error, it's like we understand why it happened, and ordinarily the courts can presume to follow the instructions, but sometimes the instructions are wrong. It just happens. It's an understated mistake. Williams should therefore get a new trial, and we just modify the instructions going forward. We fix the mistake. When a mistake is made, we give the relief because we don't know if the jury was properly instructed in the case, and then we just modify the instruction to correctly reflect the law. Then the issue won't get— Whenever any mistake is made, therefore there's a reversal for a new trial. Well, I mean, my argument is based on the instructions in this case, which are about an essential element to the case. I don't want to speculate about some random instruction that touches on taking notes. I don't know what would happen if those instructions were wrong. These are instructions that define the offense. We're talking about what are the elements in the offense. I just think that that's categorically different, and at that point I just want to briefly talk about Woods, which is in that case, Woods dealt with an instruction that just did not apply to the case at all. He was convicted in principle, and it was an accountability instruction. That's why we're talking about harmless error in Woods, because this instruction just doesn't even apply to the facts of the case. There's no dispute in this case that this element needed to be proven. The state could not have convicted Mr. Williams if it did not prove the specific fact requirement. If the unique threat had not been demonstrated at trial, Mr. Williams would not have been convicted. There was some discussion about what counsel said in closing. Counsel argued in the closing that the evidence was insufficient. Yeah, he's arguing he wasn't scared. Counsel. Yes, sorry. When you use the word inconsistent, I keep thinking that a conflict. I think of it as is there any inconsistency between the legal commands given to this jury in 11.49 and 11.50? And if so, what is that inconsistency? So the inconsistency is not in the legal command part, because, yes, a lot of times. That's the part I'm asking about, because I think that's part that's important. The inconsistency is 11.49 says this is what the offense is, gives all the elements. Yes. And this is one of those elements. So in that absence, it lowers the threshold of what needs to be proven by the state guarantees for that. For instance, we looked at a different.  Well, if we just thought about any other offense, like let's say aggravated battery at the firearm, if the instruction just didn't have you need to discharge the firearm. In this, we're just talking about this particular case. Yes. What are the inconsistencies between 11.49 and 11.50 that would confuse the jury so that they wouldn't have to find the specific elements that are necessary to convict this defendant for making a specific threat against the peace officer? So the inconsistency is, again, 4.9 says this is what this offense is. It gives all the elements. It writes them all out from the statute. And it is missing one of them. That element is just not there. And that element is a pretty important one. It says you must contain specific facts indicative of a unique threat. So that is something that elevates the state's burden of proof. It says the threat cannot just be generalized. It must contain these specific facts. 11.50 contains that language. So as I said, you know, the court, the jury, me putting the two instructions side by side, this one doesn't say that. This one does. And, yes, we hope that they look to 5.0 to do that. But 1.01 tells them you can't do that. You can't just say this instruction is right, this instruction is wrong. You know, again, we don't want the instructions to be we hope they did the right thing. We want them to actually give them the correct law so they can apply it to the case. I apologize I'm out of time. But, you know, as I said, I request that this court reverse and remand and advise the instructions be updated. Thank you very much. Thank you. This case, agenda number four, number 130779, People's State of Illinois v. Isaiah Williams will be taken under advice. Thank you both for your action.